UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| HLAVINKA EQUIPMENT COMPANY, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. V-09-62 |
| § | |
| KARUTURI GLOBAL LTD., INDIA, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendants Karuturi Global Ltd., India (Karuturi Global") and Karuturi Agro Products PLC's ("Karuturi Agro") (collectively "Karuturi" or "Defendants") Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction (Dkt. No. 11), to which Plaintiff Hlavinka Equipment Company, Inc. ("Plaintiff") has responded (Dkt. No. 14), and Defendants have replied (Dkt. No. 21). After considering the motion, response, and applicable law, the Court is of the opinion that the motion should be DENIED.

**Factual and Procedural Background**

Plaintiff is a Texas corporation that supplies Case IH tractors and other farm equipment, Defendant Karuturi Global is an Indian public company, and Defendant Karuturi Agro— headquartered in Ethiopia—is a subsidiary of Ethiopian Meadows, PLC, which is an indirect subsidiary of Karuturi Global.

According to Plaintiff's Vice President and General Manager Terry Hlavinka ("Hlavinka"), in June 2008, Rao Karuturi ("Rao") traveled to Plaintiff's East Bernard, Texas office on behalf of Karuturi to negotiate a contract for the purchase of farm equipment from Plaintiff. (Terry Hlavinka Aff., Dkt. No. 14, Ex. A, ¶ 3.) Following Rao's trip to Texas, in July

1

2008 Plaintiff made Karuturi a written offer via email to sell Karuturi 30 pieces of farm equipment and requested that Karuturi accept the offer by signing a copy and transferring a $217,802.00 advance to Plaintiff's bank account in Texas. (*Id.* ¶¶ 5 & 6.) A week later, Karuturi wire transferred the requested sum, indicating Karuturi's acceptance. (*Id.* ¶ 7.)

In August 2008, Hlavinka again met with representatives of Karuturi in Texas, including Rao and "Mr. Karuturi (The Chairman), whom [Hlavinka] believed to be [Rao's] father . . . to discuss their equipment and continued business dealings." (*Id.* ¶ 8.) In addition to filling Karuturi's equipment order, Hlavinka also arranged for prospective employees to meet with Karuturi representatives in Texas. (*Id.* ¶ 9.) The prospective employees were to travel to Africa and teach Karuturi employees how to use the equipment, and some had personal belongings shipped to Africa in anticipation of their employment with Karuturi. (*Id.*)

On August 7, 2008, Plaintiff notified Karuturi via email that the first tractors on the order were moved to port that day and that Plaintiff had confirmation of Karuturi's wire transfer. (Dkt. No. 14, Ex. A-3.) Rao responded that everything "looks good" and reminded Plaintiff "to send the keys and also the drivers." (*Id.*) Rao also asked Hlavinka to send representatives of Plaintiff to Africa to perform the initial servicing of the equipment, and Hlavinka complied with Rao's request. (*Id.*, Ex. A ¶ 10.) Karuturi thereafter requested that Plaintiff add additional equipment to the original order and transferred $935,178.00 to Plaintiff's Texas bank account in consideration for the additional equipment. (*Id.* ¶ 12.) Then in early May 2009, Rao's brother Ram Karuturi ("Ram") traveled to Texas where he and Hlavinka continued to discuss shipping arrangements for the remaining original equipment as well as additional acquisitions of equipment. (*Id.* ¶ 13.)

According to Plaintiff's First Amended Original Complaint, Karuturi later refused to accept the agreed-upon equipment and failed to pay the remaining balance it owed under the

contract, despite Plaintiff's fulfillment of all contractual obligations. (Dkt. No. 20 ¶ 10.) Instead, Karuturi claimed it "had not signed off on any purchase orders or confirmations" and was "therefore under no legal obligation" to pay any money to Plaintiff. (*Id.*)

Plaintiff subsequently filed this suit alleging causes of action for breach of contract, promissory estoppel, quantum meruit, and fraud. Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), claiming they do not have sufficient minimum contacts with the State of Texas for the Court to exercise jurisdiction over them.

## Legal Standard

In a diversity action, a federal court may exercise personal jurisdiction over a nonresident defendant only to the extent permitted by the applicable law of the forum state. *Cent. Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). In this case, the Texas long-arm statute extends to the limits of due process. *Id.* Therefore, the inquiry collapses into whether Texas can exercise personal jurisdiction over Defendants consistent with the Due Process Clause of the Fourteenth Amendment. *Id.*

In order to satisfy due process requirements, a nonresident defendant must have "certain minimum contacts" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). Minimum contacts with a forum state may give rise to general or specific jurisdiction. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 624 (5th Cir. 1999). General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic" but are not related to the alleged cause of action. *Ruston Gas Turbines*, 9 F.3d at 419; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Plaintiffs do not argue that this Court has general jurisdiction.

Plaintiffs do argue, however, that specific jurisdiction exists over Defendants. When a nonresident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," the forum state may exercise specific jurisdiction over a defendant. *Cent. Freight Lines*, 322 F.3d at 381 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The Court must assess the relationship between the defendants, the forum state, and the litigation to determine "whether the defendant[s] purposefully established 'minimum contacts' in the forum state," so that it was foreseeable "that the defendant[s'] conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there." *Guidry*, 188 F.3d at 624—25 (quoting *Burger King*, 471 U.S. at 474). The Fifth Circuit has articulated a three-step analysis to determine if specific jurisdiction exists: (1) whether the defendant has minimum contacts with the forum state, *i.e.* whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

When a defendant raises an objection to the court's personal jurisdiction, the burden is on the plaintiff to make a *prima facie* showing that jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). A *prima facie* case may be established "by alleging facts in the complaint and affidavits sufficient to establish jurisdiction over the non-resident defendants." *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 917 (5th Cir. 1987) (per curium). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as

true the plaintiff's uncontroverted allegations and resolve any factual disputes in the plaintiff's favor. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (internal citation omitted).

Because the Court has not held an evidentiary hearing in this case, Plaintiff must only make a *prima facie* showing that (1) each defendant had minimum contacts with the forum state, and (2) Plaintiff's cause of action arises out of or relates to each defendant's forum-related contacts. *Bullion*, 895 F.2d at 217; *Guidry*, 188 F.3d at 625.  Once Plaintiff satisfies this burden, the burden shifts to Defendants to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *See Cent. Freight Lines*, 322 F.3d at 381.

## Discussion

Defendants[4] deny that they entered into a valid contract with Plaintiff and assert that they do not have sufficient contacts with Texas to confer specific jurisdiction on this Court.  However, taking all of Plaintiff's uncontroverted allegations as true, it is clear that Defendants have the necessary minimum contacts to satisfy due process.

According to Hlavinka's sworn affidavit, Karuturi representatives traveled to Texas on three separate occasions in order to negotiate the equipment contract with Plaintiff: (1) Rao met with Hlavinka in Texas in June 2008 to negotiate a contract for the purchase of farm equipment from Plaintiff; (2) Rao returned to Texas with his father in August 2008 to discuss the equipment purchase and continued business dealings; and (3) Ram traveled to Texas in May 2009 to discuss shipping arrangements for the remaining original equipment as well as additional acquisitions of equipment.

Nonetheless, Defendants contend that "Rao Karuturi was not an employee, officer, director, agent, or representative of Karuturi Global or Karuturi Agro . . . and was not authorized to enter into

---

4. Unless otherwise specified, each defendant is included in the term "Defendants." While the Court recognizes personal jurisdiction must exist as to each defendant separately, Defendants filed a joint motion to dismiss, and the evidence and affidavits submitted by Defendants are identical. The contacts relied upon by the Court in finding specific jurisdiction are the same for each defendant.

any contract on behalf of Defendants." (Dkt. No. 11 ¶ 6.) However, Plaintiff has presented evidence that Rao represented he had "clear authority to enter into an agreement, make a deal on behalf of Karuturi and was, in fact, in East Barnard, Texas, for that purpose," and Rao's brother Ram further indicated that Rao was Hlavinka's "point of contact with Karuturi." (Dkt. No. 14, Ex. A ¶ 14.) Moreover, Plaintiff has presented evidence, and Defendants admit, that Ram is the Founder and Managing Director of Karuturi Global. (*Id.* ¶ 4; Dkt. No. 11, Ex. A ¶ 2.) Defendants also admit that, "pursuant to Rao Karuturi's communications with Hlavinka, the tractors, equipment, and implements were consigned and shipped to Karuturi Agro." (Dkt No. 11 ¶ 22.)

Taking Plaintiff's uncontroverted allegations as true, the Court concludes that Ram and Rao were acting on behalf of Defendants when they reached out to Hlavinka with the aim of entering into an ongoing business relationship with Plaintiff. These contacts by Defendants with the state of Texas cannot be characterized as "random," "fortuitous," or "attenuated." *See Cent. Freight Lines*, 322 F.3d at 383. Therefore, based on Defendants' repeated visits to Texas, requests for Plaintiff to send employees from Texas, and transfer of large sums of money to Plaintiff's Texas bank account(s), the Court finds that Defendants have sufficient minimum contacts with this state.

In addition, Plaintiff's fraud and misrepresentation claims against Defendants, as well as the injuries alleged as a result, arose out of Defendants' contacts with Texas. *Guidry*, 188 F.3d at 628 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)) (When a nonresident defendant commits a tort within the state, or an act done outside the state that has "consequences or effects within the state [this] will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."). Where there is intentional and allegedly tortious activity aimed at Texas, the tortfeasor must "'reasonably anticipate being haled into court there.'" *Calder*, 465 U.S. at 790.  Defendants,

therefore, should have reasonably anticipated being haled into court in Texas on intentional tort claims that were related to their alleged fraudulent contracting with Plaintiff during business negotiations held in this state.

Once it has been decided that a defendant purposefully established minimum contacts within the forum state that arise from or relate to plaintiff's cause of action, the burden shifts to the defendant to make a compelling case that the exercise of personal jurisdiction is unfair or unreasonable based on five factors: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006).

Defendants have not made a sufficient showing that litigating this matter in Texas is unfair or unreasonable. The burden on Defendants to litigate in Texas is no greater than the burden requiring Plaintiff to litigate in Africa, and defending this case in Texas will not place an unreasonable burden on Defendants, given that their representatives have traveled to Texas on three separate occasions in connection with contractual negotiations with Plaintiff. Moreover, this case involves injuries allegedly suffered by a Texas company as a result of Defendants' alleged breach of contract and fraudulent conduct, and a number of Texans who traveled to Africa to be employed by Karuturi may be fact witnesses in this case. Thus, Texas has a substantial interest in litigating these claims against Defendants. Plaintiff also has a strong interest in obtaining the convenient and efficient relief that can only be provided by a lawsuit in its domicile against Defendants.

Accordingly, the assertion of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. The Court expresses no opinion on whether Plaintiff's claims have

any merit; however, the Court finds that, based on Plaintiff's Complaint and the affidavits submitted, Plaintiff has made an adequate *prima facie* showing that Defendants have sufficient contacts with Texas for this Court to exercise personal jurisdiction.

## Conclusion

For the aforementioned reasons, Defendants Karuturi Global and Karuturi Agro's Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction (Dkt. No. 11) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 27th day of May, 2010.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE